Thank you, Your Honor. I'll say good morning. My name is Tom Warren, and I'm here in both of the two matters that we have here representing photometics. Now, in the first of these two matters, we had a summary judgment ruling by the district court in this case. The primary issue on this appeal relates to the question of whether or not my client had standing to the defendants in this case had misrepresented that the FDA had approved the laser that they were marketing. So the real issue is whether or not you can get out from under the lacquerware pipe a cause of action under the Federal Food and Drug and Cosmetic Act by characterizing it as a Lanham Act case. Well, I think it is. I mean, it is. Right. And the question, there is clearly an intersection between the Federal Drug and Cosmetic Act and the Lanham Act. Now, of course, there is nothing within the four corners of the FDCA, which actually precludes a Lanham Act case. Interestingly, the Eighth Circuit, when it's been confronted with these issues, has not sort of dealt with it as a standing issue, whether or not my client would have standing to assert this kind of claim. Do you think CyberSound Records has anything to do with this issue? I'm not familiar with the case. Okay. The Eighth, if I might, the Eighth Circuit in the L-Pharma case dealt with this really as an issue of primary jurisdiction. It was more a question of whether or not there should be deference in the first instance to the FDA acting before the court would otherwise exercise its jurisdiction to consider the matter. And we would submit that the district court inaccurately characterized the claim that was actually asserted in this case. And by framing the issue as the district court did, the case became one in which the argument for standing became much more difficult. But actually, the cause of action that was asserted here was relatively straightforward. There was a representation that was made by RA Medical in 2003 and then again in 2005 that their particular laser had been approved by the FDA for the treatment of psoriasis and vitiligo. And although the cases from the Eighth Circuit, the Tenth Circuit, Third Circuit and the Fourth Circuit on the intersection between the FDCA and the Lanham Act are varied in their approaches and certainly very fact-specific, the one thing that all of those cases hold is that when there is an actual affirmative representation by the defendant that their product has been approved by the FDA, that falls within the parameters of a cause of action for which the plaintiff does have standing to assert that claim. Well, the potential problem, though, is given the nature of the regulations here, how do we answer that question without trying to become the FDA? Well, I guess there are two answers to that question. The first answer to that question is that the FDA actually answered that question themselves in this case. Now, that happened sort of during the pendency of the lawsuit. I'm not sure that I know or that my perception of what their answer is is the same as what you and your client's perception of what their answer is. I mean, do you think the FDA answered that question yes or no? I think the FDA definitely, well, the FDA answered that question by saying, no, you do not have clearance to market this until and unless we rule upon your application for clearance. And then subsequently there was no action taken, no adverse action taken by the FDA. That's true. But for the period of time from 2003 until 2007, the representation was not that the FDA would approve this had they, in fact, submitted it. It was the fact that the FDA had already approved the laser for clearance. Now, you're aware that there's an alternative interpretation of the FDA's actions, the letters that were sent. And that's really what returns me to the question that I posed at the beginning. How could we possibly answer this question without, in effect, stepping into the shoes of the FDA and trying to make a judgment which they never announced directly but announced through a series of staff actions? Well, I guess the first answer would be that because the courts have uniformly held that a representation that something has been approved by the FDA is appropriate under the Lanham Act for standing purposes. And in those cases, other courts that have looked at the issue have said even if the answer to that question touches upon the actions of the FDA or upon the FDA regulations, the party has standing under the Lanham Act to bring that claim. So to the extent that there is a necessity to interpret the FDA's actions or the FDA's regulations, so be it. That is an appropriate fact-finding function of a judge or a jury that's going to consider the Lanham Act claim like they would in any other type of situation in which the actions of a federal agency are going to be interpreted. But also, in this case, we draw upon the principles espoused in those cases that the deference that's given is the question of whether or not the court or jury would be acting preemptively on this issue. So whether or not this matter has essentially been adjudicated to its full extent by the FDA. Whether or not the parties disagree about the interpretation of the particular actions by the FDA. But in either circumstance, so that's So let me understand. In your view, what we should do with respect to your Lanham Act claim is to reverse the judgment of the district judge that you have no standing and to send it back to allow the district judge now, in light of what the FDA has done, to decide whether or not it was a violation of the Lanham Act. Then the district judge is going to interpret what the FDA did. Well, I guess two points. I mean, in the first instance, I think since the FDA has acted and has concluded acting, it is, there is clearly standing to articulate the claim. I would also submit, Your Honor, that there was standing. Is that right? Just because the FDA has made the determination that it gives you standing? Yes, Your Honor. I think that also this claim was appropriately brought at the time because the representation that something has been approved by the FDA, every court that has looked at this issue has held that that type of affirmative representation. But 337A states that all proceedings for the enforcement or the restrained violations of this chapter, referring to the FDCA, shall be by and in the name of the United States. I don't think you represent the United States, do you? No, Your Honor. But the claim in this case was not for a violation of the FDCA. It was a claim for misrepresentation to the public of statements related to whether or not the FDA has approved something or not. So your argument is, okay, let's make this a clean case instead of the case we have in front of us, that it's quite clear that this device has never been submitted to the FDA for approval, there's never been approval. The FDA has not been within a million miles of this particular device. Nonetheless, the sellers of the device represent that it has been approved by the FDA. Yes, Your Honor. And you're saying, well, there's a cause of action under the line of act for that misrepresentation. I am, indeed. So then the factual question is, has it or has it not been? And you're saying, well, that's the factual question here. Has it or has it not been? And this case turns out to be messy because at the time you bring your lawsuit, it's not clear whether they've approved or not approved. Indeed, even now, given what they did, it's not entirely clear whether they approved or didn't approve. They're going to say, well, of course they approved on the earlier approval, and this is just a follow-on device that's so similar that the earlier approval obviously falls within it. Have I understood the framing of the questions properly? Yes, Your Honor. I mean, to one extent. If there had not been an affirmative representation that the FDA had approved this, then the question of whether or not the FDA had acted or whether or not the court or the jury would somehow be preemptively dealing with an issue that the FDA had not dealt with would be the question, and that would present a more complicated issue when there is a disputed issue of fact about what the FDA has done on the one hand or not done on the other hand, and that makes these standing questions very confusing, frankly, and it's difficult to articulate a principle by which you can identify these standing issues when there are disputed issues of fact in a case. But here, we have an affirmative representation that the FDA has approved this laser, and the courts that have considered this issue have held that it is irrelevant whether or not the FDA has acted with respect to that issue or not. If there is an affirmative representation that the FDA has approved something or not, a court or a jury is able to answer that question under the Lanham Act, regardless of whether or not there has actually been an action by the FDA on that issue. So we would submit that for two independent reasons here, they are standing, both because there is an affirmative representation that the FDA has approved something and because the FDA has already done everything that it is going to do with respect to a resolution of whether or not RA Medical's device had clearance or not. So for two independent reasons, that actually makes this an easier case for standing. I wish you were familiar with Cybersound, because I think this may address much of our issue here. In that case, we held that someone could not bring a Lanham Act claim to the court on the basis of an alleged copyright claim, saying that they had a copyright because the copyright law only gives that right to the holder of the copyright. Somewhat analogous here, and the finding was there was no right, no standing under the Lanham Act. If you don't know the case, you really can't much address that, but it seems to me there may be, it's really an analogous situation here. The law makes it very clear that the FDA is the entity that has the standing to enforce that law, somewhat analogous to the holder of a copyright. And you're stepping in under the Lanham Act to make a claim that arguably there's no, you know, that's not what the law contemplates that you would be doing in this case, because it's the claim of the government, it's the claim of the United States. Again, since you don't know the case, it's kind of hard to argue this, but I'll just say I am troubled by your claim on this particular issue. Well, Your Honor, I would submit that with respect to the FDCA, it is true that the government has the exclusive authority to bring a claim at the FDCA, but the Lanham Act, you know, there are principles of law that when there is an available cause of action under a federal statute, unless there is some, you know, principle, jurisdictional principle by which someone is not able to bring that cause of action, you should be allowed to bring that cause of action. The primary jurisdiction jurisprudence, which the Eighth Circuit looked at in the Al Farma case is interesting, because there it simply says, you know, of course you would have jurisdiction to bring this type of claim, or you would have standing to bring this type of claim, but where there is some agency action that needs to occur, we will defer a case until such time as that would occur. But again, like I said, in this other case, you had a situation where you have the Copyright Act, where the standing is in the copyright holder to bring a claim. You've got a third party who's saying, well, these people are advertising that they're a copyright holder. They can't do that. So they try to step into the shoes of the copyright holder, and the Lanham Act doesn't cover that, at least according to what CyberSav records. Well, it would be one thing if there were a statute out there that said that certain private plaintiffs were entitled to bring a Lanham Act claim, or an FDA claim, and not others. Here we have a situation where there is no restriction on whether or not a competitor can bring this type of Lanham Act claim or not. The Lanham Act is clear that if you have an affirmative misrepresentation, it's likely to deceive. You don't think the Lanham Act speaks to this very well. I mean, if you had the case where the FDA had never heard of this device, never seen it, and you got somebody out there hawking saying, FDA approved, there's no question, but there would be a cause of action. What makes it difficult is that Congress appears to have taken, within the statute that gives the FDA its authority, the FDCA, and said, look, this territory is off limits to anybody but the United States, and this territory is what's not explicitly defined. The potential problem for me here, and I've got to say I've gone back and forth on this case, is that we now look backwards at what the FDA has done, and I'm still damned if I can figure out what the FDA's position was about this device during that time period. And that becomes a hard task for a court. Okay, we take on hard jobs. The real question, has Congress said through the statute, that's just off limits. We're going to let the FDA decide when it's going to enforce and when it's not going to enforce, and nobody else can be involved in that decision. Why isn't this part of the off limits that Congress has marked? Well, let me take you back here, if I might, to your original hypothetical. You said if we had an empty box, let's say RA Medical had an empty box, and they said, this empty box has been approved by the FDA. Somehow that would be appropriate to bring a claim under it, because it would be an easy case of misrepresentation. Where here, ostensibly, we have a closer call. Well, not easy, yes, but easy because there is no FDA decision making involved. There was not an application, there's not even the conceivable possibility that the FDA had approved that box, because the FDA had never heard of that box. Well, and let me submit to you that under the facts, I would contend that the facts in this case are not that different. Keep in mind that in December of 2002, to get into the facts just a little bit, in December of 2002, RA Medical submitted a request for clearance for this laser. Way back when, by March of 2003, they had not received any action on that request except that the FDA had requested more information. At that point, at the last minute, they went to a third party, Surgilite, and licensed the rights to Surgilite's laser, and then immediately dashed off to the American Academy of Dermatologists trade show in San Francisco and represented that the laser, their laser, had been approved by the FDA. Even though the FDA had not even ruled on, quote, unquote, their laser at the time, and they didn't even have a laser at that point. So if that version of the facts is correct, and I would submit to the court that there is ample evidence in the record that RA Medical had absolutely no laser at the time that they represented that their laser had been approved by the FDA. And, in fact, we don't even see for another year and a half a laser that is actually marketed to the public. And if they are misrepresenting that their laser is the Surgilite laser, and, again, we have testimony in the record from the CEO of Surgilite and the president of RA Medical that the designs for the Surgilite laser were never given to RA Medical and that it would have been impossible for RA Medical to have recreated the Surgilite laser on its own without that information, then it is as clear-cut a case as in the hypothetical we talked about, which is RA Medical has an empty box, and they are representing that that empty box has been approved by the FDA. So the question in this case is very fact-specific. If the question of whether or not they are standing in this case depends upon the resolution of these disputed issues of fact, that doesn't present a very functional methodology for determining whether or not they are standing in this case. I think we've got it. Let's hear from the other side, and we'll give you a chance to respond. Thank you. May it please the Court, John Adams on behalf of RA Medical Systems and Dean Irwin. There are two points, Your Honors, that I hope to address primarily. First, I think it is clear that there is no standing under Section 337. And second, we don't believe that there really were any factual issues. We think that the district court could have properly found that there was no misrepresentation whatsoever. Okay, let me start out with your first point and see how far you agree or disagree with your adversary on this one. Let's assume that we have someone who is representing that he It's simply not true. He's never been to the FDA. He never plans to go to the FDA. It's a flatly untrue statement, and everybody and his dog, once they get into it, knows that it's an untrue statement. Is that a Lanham Act violation? I don't think it is a Lanham Act violation, Your Honor, because you are still solely enforcing Do you disagree, then? Is the Eighth Circuit's case of Alpha Pharma incorrect? I disagree with that case. I consider that In other words, you're saying to us that the Eighth Circuit would hold otherwise from the answer you're now giving? Yes, Your Honor. Do you have any circuit that goes with you on that point instead of a circuit that goes against you on that point? No. What the cases have talked about from the different circuits when you're dealing with approval was when there was essentially no basis upon which you could claim approval. But on that point, then, you're asking us to create a circuit split, as to say you've got a case against you in the Eighth Circuit, and there may be some others in the other And you've got no case that goes with your way on that point? Well, I guess the case I would say, Your Honor, would be the Buckham Supreme Court case. And if your claim is based solely on violation of the FDCA, then you don't have standing. Well, I'm not saying that there's a violation of the FDCA. I'm saying that the claim is you're lying when you say that it has been approved. It's not been approved. You've not even sought the approval. It might not even need approval, but you said something that is factually untrue. Because it is based solely on the FDCA, I don't think that there would be a violation. In any event, Your Honor, that's not the factual scenario. But in other words, I just want to make it clear that you're simply disagreeing with the holding in Alpha Pharma. Yes, Your Honor. Okay. The next question is, okay, assume for the moment that Alpha Pharma is right, which I don't ask you to concede, because you could have said the opposite. Why isn't this now just a factual question as to whether or not your client lied? And then we do that on the ordinary way we do things, summary judgment or trial. Well, where I disagree with opposing counsel is when you've been developing your own device and you've got a trade show coming up in a few months, and when you then become a manufacturer through a licensing agreement from a company who's already got a device in place, and you also become a 510K holder of that device, you therefore, under the federal regulations, the FDCA and the MDA, have basically the discretion to decide whether or not you are going to submit a new 510K. You don't need to as long as the devices are essentially the same or not substantially different from one another, such that you get into some sort of safety issue. And that's exactly what happened here. Well, there are a couple of paths to go down here. I want to go down a side path briefly, and that's the interjection I made before. This device might not need approval. Correct. But that's not the statement that was made by your client. Your client apparently said that the machine was approved. Not that it didn't need approval, but was approved.  Well, again, the terms approval and clearance have kind of been used interchangeably throughout. Really, the issue that Photometics' counsel argued before the district court and that the issue, the way the district court framed the issue, is whether or not we had a valid 510K clearance. If we could claim that we had a valid 510K clearance, then certainly there was no standing. I might not quibble about the difference in words. If you said FDA approved, because that's simple and understandable, and what you had was a letter from the FDA saying you don't need it because you're covered by this other clearance we've given to whatever the other company's name was. But that wasn't something you had in hand. That wasn't a done deal. That might have been a position that you were taking, but it's not something that the FDA had signed off on. So my question is really similar. Is a statement FDA approved suggest a resolution and a certificate or an agreement by the FDA that you didn't have because you were simply asserting the position or taking the position that approval wasn't, separate approval wasn't necessary? Then, Your Honor, then I would go back to basically the FDA regulations and part of the exhibits that were before the district court and are part of the record are basically these memos that are provided to manufacturers because the regulations themselves are so confusing. You've probably seen the flow chart that's extremely hard to follow. And basically, it's clear from the regulations and the memo that if you are a manufacturer and if you are the holder of a 510K, which they were by virtue of SergiLite's 510K, those were approved for psoriasis and vitiligo. It is up to you and it's discretionary whether or not you need to submit a new 510K. So if you've got it, if you've essentially become SergiLite's device and you are now the manufacturer, you have approval or clearance from the FDCA. It sounds like a factual question to me. Well, even if it is a factual question, Your Honor, I think the Sandoz pharmaceutical case and the Dial-a-Car cases made clear that if you have to interpret how the FDCA acted, then you don't have standing. And even from a public policy standpoint, if on the one hand, raw medical is entitled to after two and a half, three and a half years of FDA involvement, where the worst that the FDA said was basically it's come to our attention that there may be some indication that you need to have. This is not a claim for violating the Food and Drug and Cosmetic Act. This is a claim for false advertising. But there is no claim for... The whole, the gravamen of their complaint is that you took sales away from them by advertising a product that had qualities or characteristics or approvals that it didn't have, that you argued that the product would be available by a certain time, is not available till over a year later, but because they say it's going to be available for a certain time, they're able to take sales away that otherwise would go. I mean, this is a false advertising claim. This is not a claim that you're violating the Food and Drug and Cosmetic Act. Well, Your Honor, I guess I would respond again in two ways. It is based solely on the FDCA violation because if... I mean, even if you go back to Mr. Fuller's declaration in opposition to summary judgment motion, and he was their laser expert, he basically characterizes this as a fraud on the FDA. In other words, you misrepresent... It may or may not be a fraud on the FDA, but they're not charging that. They're charging false advertising. Well, again, respectfully, I think the cases are clear that if your claim is based solely on a violation of the Food, Drug and Cosmetic Act, or if you have to interpret what the FDA has done, you don't have standing under 337. And, Your Honor, to bring you a little bit back to the history, if you look at for almost two years, photomedics involved the FDA to get involved in these issues. And they even got the FDA to send an initial letter. Well, there's nothing on record that indicates you have a clearance. So Mr. Irwin from Raw Medical Response, he explains the surgery light approval. No more word from the FDA until several months later, when again, from Photomedics Council's Ponting, the FDA actually conducts an inspection. And one of the issues that the inspector raised to Mr. Irwin was, explain to us why you're entitled to go forward. You don't need a new 510K clearance. Mr. Irwin explains because we've got the surgery light license. And again, the regulations are clear. If you are the manufacturer or the holder of a 510K, which they were, you don't need to submit a new 510K application unless there's substantial deviation. Mr. Irwin responded in letter form. It was too confusing for the inspector. So she said she was going to send it to the reviewing division. A few months later, the inspection comes out, and Mr. Irwin gets a report. There's no indication there's been any violation whatsoever as far as the FDA is concerned. And in fact, the introductory letter basically said this inspection is closed. Nothing again is heard from the FDCA until Mr. Irwin submits a new 510K for additional application, something that photomedics would repeatedly do. And then again, they receive a letter basically saying you can't market your device. The factual issue before the court, which the court didn't need to resolve, and for which they're arguing that they've got standing, is whether or not that meant that you couldn't retroactively use the initial surgery light license or not. And again, the district court properly said that that's a factual issue she can't get into. I know that factual narrative. Let me ask a related question, but it kind of goes along with false advertising. But this is no longer Lanham Act. This is 17500. The argument is that you are presented that your laser would be available, I think, in the summer of 2003, but in fact, it doesn't actually become available on the market until something over a year later. And the contention is that you're saying that it was going to be available in the summer of 2003 makes people who are in the market and thinking about it say, well, I might buy it from them rather than from you guys because I anticipate this earlier date, and that because of your false prediction, or as they would say, a false statement, they lost sales. Why is that not actionable based on the evidence that they've got in front of us? At least go to a trier of fact on the question. Well, primarily because it's a forward-looking statement, and we cited the Bayview case. Forward-looking statements are not immune. I can't go and say, look. I know that next week that property across the street is going to be condemned by the government. They're going to pay $5 million for it. So here's a chance to get in at 350. Unless I have a good-faith belief in the statement, I can't lie about the future. So it's not enough to say forward-looking statement, end of game. Well, that's true. You need some facts in there as well, Your Honor, in the district court, sir. We have allegations that there could not have been a good-faith belief that the statement was true because there's no way that laser could have been ready to go to market at the time it was said. Isn't that allegation made? That allegation was made, but I think the district court properly disregarded it because if you've got a situation and you're going down a slippery slope, if you can basically have a big, long-established company, new company just popping up on the horizon, and they went ahead and they purchased as a manufacturer rights to a device that was already in existence, and that was in the record before the district court, through Surgilite, and you've got somebody with Mr. Irwin's background in there. How is this not all factual? You're giving me lots of factual reasons why this shouldn't be held, something that your client shouldn't be held liable for, but these are all factual reasons. I would respond in two ways, Your Honor. First, they are factual in nature, and I can't dispute that, but my contention would be no reasonable jury could conclude otherwise. When you're sued and you're expending your startup capital, and that was unrebutted testimony from Mr. Irwin's declaration, of course you're not going to be able to meet your projections. That was unrebutted. What was the consequence of having to spend capital on defending the lawsuit? And, Your Honor, again, look who you're making this statement to. You're making this statement to sophisticated dermatologists who are going to have an appreciation. I don't know much about lasers. Doctors are the biggest suckers in the world when it comes to investments. Well, then I guess. They're only after judges. Your Honor, it was, again, it was all based on the press release that Surgilite had basically sent, where they thought, they indicated that raw medical anticipated, was the word, that there would be a release later that summer, five, six months down the road. On the second page of that press release, and that's an excerpt of record 192 and 193, basically they have a disclaimer. They say, this is a forward-looking statement and check your own facts. I mean, look how many times the company says they're going to come out with a device, whether it's a computer game, whether it's Vista for. Time's running, but I think we understand the point. The last point here is describing Dr. Irwin as an inventor, the invented, he invented. I'm having trouble with the words that float around here. The district judge seems to go back and forth as to whether or not Dr. Irwin is described as an inventor, or the inventor, or whether he invented. So now we have a verb instead of a noun. What was the actual advertisement, or what were the actual advertisements with respect to any representation about Dr. Irwin as an inventor, the inventor, or whatever? I don't want to misrepresent because I don't know exactly. My recollection, Your Honor, was that the term inventor was used. I don't know that it was as narrowly defined as an inventor or the inventor. In any event, I don't think that makes, I think that's a distinction without a difference because we cited, I think it was the Trojan case to the course, or the Trovan case to the course, where you can have more than one inventor. Yeah, but if there's more than one, then he's not the, that's the problem. He and I am at that point. Well, I'll ask the other side. I mean, is there, that's their case and it's their evidence, so it's unfair to ask you. To briefly sum up, Your Honors, for four years, the FDA had a crack at this. Photomedics didn't get the response they wanted. The district court shouldn't have to get further involved, and the court shouldn't have gotten involved in the first place. So we respectfully request that you affirm the judgment. Thank you. Okay, thank you. Response? Start, why don't you start with the easy one. Let's start about with the inventor question. An inventor, the inventor, he invented. At least I hope it's the easy one. And Your Honor, I likewise don't want to misrepresent the record on this issue. Might I have a moment, Your Honor? Yeah. I was confirmed with my co-counsel. It was my recollection that the representation was that he was the inventor. Certainly, if the representation was. You can't point me to the record at this time. Your Honor, I can't, but I will. Try ER 132, although I confess the copy I have with my eyes. I can't say that I've actually found it within that page, but I have a note that references it. If you're more familiar with the document, maybe you know what to look at. I can't read anything on the page. These are difficult copies as well. Never mind.  Our medical systems was co-founded by Dean Irwin, inventor of the first FDA approved. So I didn't say and it didn't say V. It just said it said nine. And another document. It has a verb. He invented. But I've been unable to find a document that says he is the inventor.  Fair enough, Your Honor. Just quickly, if I could, on the on the on the complicated issue of standing, I would just I would submit to the court that in the eighth in the Eighth Circuit, in the Alpharma case, the Tenth Circuit and the Cattrell case, the Fourth Circuit in Milan, the Third Circuit in Sandoz, as well as actually a plethora of cases in the central district of California that have been dealing with this issue. There is not a single court that has held that you may not bring a Lanham Act claim for a representation that a product has been FDA approved. Every single one of them, whether they dismiss the claim on standing grounds or not, distinguishes that these cases, to your knowledge, address the issue or they simply just went ahead and tried it, didn't discuss it. They they they address the issue. Most of them address the issue in the context of summarizing the body of law that is out there among the various jurisdictions in an attempt to harmonize the cases. Did did did now Alpha Pharma, I gather you're saying I don't have that in front of me here, but did that one specifically address the factual issue before us and conclude that there was standing by someone in your client's position to bring a Lanham Act claim? Your Honor, if I might. Yeah, in the L Pharma in the L Pharma claim, in the L Pharma case in the Eighth Circuit case where they discuss the issue of primary jurisdiction, they distinguish between a question of whether or not a device should be approved from whether or not, in fact, was approved and allowed the claim to proceed. And so they're saying that if there's a statement that it was approved, so you didn't have to get involved in what the FDA would do in considering it, that there was standing at that point. That's right, Your Honor. And in fact, the cases like Summit Technologies, the central district case that summarized a lot of these cases, they say, and I'm quoting now from Summit, once a party has commercially represented that a product has received FDA approval, the court has jurisdiction to resolve Lanham Act claims, even if the truth may be generally within the purview of the attorney. In this particular case, I gather that the device that the new company from which Erwin's folks got a license, was that device FDA approved? Yes, that device had been cleared by the FDA in two separate orders for the treatment of psoriasis and vitiligo. Of course, the factual question is, it's our contention, and we think the record is relatively clear in our favor, that they didn't, that wasn't their laser. And so their representation... Well, let's say if they're licensed, I mean, lots of people sell things under a license and they represent them out under whatever the licensor's brand may be. If they had a license in this device, and that was FDA approved, I gather you'd have no problem if they said, this device is FDA approved. Your problem seems to be that the device that your client had, that was, you allege, taken by Mr. Erwin, had not yet been approved, and you're claiming that he represented that that device was FDA approved. Is that correct? Well, no. What we're representing is that raw medical, the difference in this case, they hadn't finished their laser yet. They submitted their own request for clearance. It wasn't ruled on. So they went and licensed Sergilite's product, said that was their laser, and said it was approved as a result. Okay, so I guess my point here is, in the actual advertisement, if they did not identify which laser they were referring to, does that mean that they have lied about FDA approval? If, in fact, it could have meant the one from the licensor? Well, that's the quintessential question of fact in this case. Right, no, I understand. And to make that representation... I understand it's a factual question, yeah. And, you know, from our perspective, you know, the district court's resolution of these facts against our client, notwithstanding, we think, actually, the record is relatively clear to the contrary. Yeah, well, actually, the district court on that point didn't get to it, because they say no standing. So my understanding is that raw medical gets a license from Sergilite, but they end up not manufacturing Sergilite. They end up manufacturing Pharos. That's your argument. That's our argument. Now, the district court assumed, essentially, for the sake of the argument, that their laser was Sergilite's laser and then discussed whether or not incremental changes to that laser would have necessitated an additional laser. And you say that's not true, and they say it is. That's completely different than the version of the facts that we report before a court. Thank you.
judges: Fletcher W. , Clifton, Smith M.